## Commonwealth v. Letteer

*Walter R. Sohn*, for Commonwealth.
*Solomon Hurwitz* and *I. E. Meyers*, for defendant.

SHEELY, P. J., fifty-first judicial district, specially presiding, August 5, 1949.—Defendant, who was convicted of the crime of cheating by false pretenses, has filed a motion in arrest of judgment and for a new trial. The charge arose out of a written contract whereby defendant agreed to remodel a house for prosecutrix for the sum of $4,545.45, payable: $1,500 upon execution of the contract; $1,000 when the foundation walls and joists were in place; $500 when the roof was completed, and $750 when the plastering was finished. The contract contained a provision whereby the contractor agreed to furnish "a release of mechanics liens signed by sub-contractors and materialmen as the work progresses and as payments are made by the owner, and before final payment is made the contractor shall furnish a complete release of mechanics liens verifying all bills are paid and subcontractors are satisfied."

After commencement of the work an oral agreement for additional work at a cost of $700 was made. As the stages of the work were reached when payments were required under the contract defendant asked prosecutrix for payments. On each occasion she asked defendant if all bills had been paid and was assured by him that they were, and she then made the payment but did not ask for or require the release of mechanics' liens provided by the contract. Several times she asked for the bills that were paid and defendant told her that he did not have them with him—they were at home—he would bring them in. She testified that she did not refuse payment until the bills were produced because she trusted him. Actually, the bill of the Snyder Lumber Company, which at the time of trial amounted to $1,860.98, was not paid and a mechanics' lien was filed for that amount. It was also shown that a bill due Frederick J. Schmidt was unpaid at the time the checks were given.

Defendant contends that under this testimony, which the jury believed, he would not be guilty of receiving money under false pretenses because he received nothing more than the amounts which prosecutrix was legally obligated to pay him under the terms of the contract and that, at most, the alleged deception was as to a collateral matter. We have no quarrel with the rule announced in Commonwealth v. Thompson, 3 Pitts. L. J. 251, and Commonwealth v. Henry, 22 Pa. 253, 256 (1853), and relied upon by defendant. In the latter case the court said: "A false representation by which a man may be cheated into performance of a duty is not within the statute." This argument overlooks the fact that prosecutrix, under the contract, was not under a legal duty to make payments until a certain amount of work was completed *and* defendant furnished releases of mechanics' liens signed by subcontractors and materialmen. While defendant had completed the required amount of work, he had not complied with the contract by furnishing the releases of liens. As a result of his false representations that all bills were paid prosecutrix did not require the release of mechanics' liens but made the payments which she was then not legally required to make. The rule announced in the cases cited would therefore not apply.

Defendant contends that prosecutrix could, and did, waive the furnishing of releases of liens. This is undoubtedly correct, but under the testimony the reason she waived the furnishing of releases was because she relied upon the false representations that all bills had been paid. The representation was therefore as to a very material matter and was not in any sense collateral to the issue as in the case of Commonwealth v. Gouley, 5 D. & C. 41 (1924). It is evident that the purpose of the question asked by prosecutrix each time a request for payment was made was to determine whether to insist upon releases of liens which would not

be necessary if the subcontractors and materialmen had been paid.

Defendant contends that the court unduly restricted the introduction of testimony and the issue submitted to the jury. It appears that after starting to work on the original contract the parties entered into an agreement for additional work. It also appears that there were a number of matters in dispute between them. Defendant sought to go into all those matters and to treat the case as though it were a civil action. It was his contention that the changes made in the contract and the additional work done by him explained his failure to pay the bills due the materialmen. It was also his contention that he should be permitted to prove that the materialmen extended credit to defendant.

As we have above indicated, prosecutrix, under the principal contract, was under no duty to make any payments to defendant until he produced releases of liens. She did make the payments as requested without the production of releases, relying upon his false statements that all bills had been paid. It is not intimated by defendant that the payments made were for extras under the additional contract or that they were for any other purpose except payments on the principal contract. The matter of the extras was not discussed at any time payments were made. Consequently it is wholly immaterial what defendant did with the money or whether prosecutrix was indebted to him for extras or whether he completed his contract satisfactorily or was prevented by prosecutrix from so doing. Testimony as to these matters would have raised collateral issues which could have served only to confuse the jury. It is entirely possible that the work cost much more than the contract price, and that prosecutrix, by ordering extras, put defendant to greater expense than he anticipated, and that he used all the money received

from her for the purpose of paying for labor and materials on the job, and that she may now be indebted to him for the extras, but if he made false representations as to the payment of bills for the purpose of getting money from her when she was not legally liable to pay it, he would be guilty of the offense charged. Likewise, the fact that the materialmen extended credit to defendant would be immaterial since that did not thereby waive their right to file liens, and his representation to prosecutrix was not that credit had been extended to him but that all bills had been paid.

In support of his motion for a new trial defendant further contends that the court erred in charging the jury as to the essential element of the intention to cheat and defraud.

"A criminal false pretense has been said to be 'the false representation of an existing fact, whether by oral or written words or conduct, which is calculated to deceive, intended to deceive, and does, in fact, deceive, and by means of which one person obtains value from another without compensation': Com. vs. Goldberg et al., 130 Pa. Superior Ct. 252, 260. . . . In order to bring a case within the statute, the following elements must co-exist: (1) A false pretense; (2) an obtaining of property or something of value thereby; (3) an intent to defraud": Commonwealth v. Gross, 161 Pa. Superior Ct. 613, 618 (1948).

"The correct way to determine whether any particular case falls within it is, not to consider each of these things separately, but to look at them altogether": Commonwealth v. Brady, 101 Pa. Superior Ct. 336, 338 (1931).

In the present case the defense was based on the theory that prosecutrix had parted with nothing more than she was legally obligated to pay and that she had made the payments waiving her right to insist upon the releases of liens. This is evident from the statement

of defendant's counsel at the conclusion of the charge. The court three times referred to the elements necessary for the Commonwealth to prove to establish the charge. The jury were told that the Commonwealth must show that defendant made a false statement, knowing that it was false, and that prosecutrix acted upon the statement by parting with her property relying thereon. They were also told that the statement must have been made "with the intention that Mrs. Shirey should act upon it"; and with the intention that "she would act on that statement and part with her property"; and with the intention "of getting something from Mrs. Shirey to which he would not then have been entitled". While the charge did not, in words, use the language of the statute, "with intent to cheat and defraud any person of the same", the language used was sufficient to indicate to the jury that one of the elements of the offense was the intention to get property to which defendant was not entitled. The use of the words "with intent to cheat and defraud" would not have made this point any clearer to the jury. In view of the defense presented by defendant no further elaboration of the element of intention was required, and defendant himself was satisfied with the charge on this point as his only request for further charge was on the question of the waiver of releases of liens by prosecutrix. After reviewing the charge as a whole we are satisfied that the jury was not misled and that the elements of the offense charged were properly presented to them.

The remaining reason in support of defendant's motion for a new trial relates to a situation which arose during the cross-examination of a character witness for defendant. Mrs. Dorothy Hartman testified that she knew defendant "very well" and that his reputation was the very best. She was asked on cross-

examination where defendant lived and replied that he had lived in her home for the last four years and that she had known him for 15 years. She was then asked "he is married, is he not" to which question counsel objected and the witness asked whether she was required to answer that question. The court directed her to answer and she replied that she did not know too much about that. She then admitted that she did know that he was married. In his argument to the jury, private counsel for prosecutrix referred to this testimony as bearing on the credibility of the witness and quoted the witness as using the expression that defendant had been "living with me". The court called counsel's attention to the fact that the testimony was that defendant had been living in the witness' home and counsel immediately corrected his statement to the jury. The argument was limited to the question of the credibility of the witness but defense counsel later asked that a juror be withdrawn because of an alleged unfair inference against defendant.

Defendant, having called Mrs. Hartman as a witness, vouched for her credibility and it was entirely proper for counsel for the Commonwealth to argue this question since she was evasive as to her knowledge of defendant's marriage. The argument did not go beyond proper limits and the Commonwealth did not ask the jury to draw any inferences as to an improper relationship between defendant and the witness. If the situation was magnified in the eyes of the jury it was because of the strenuous objection made by defendant's counsel. Defendant's motion in arrest of judgment and his motion for a new trial must be overruled.

And now, August 5, 1949, defendant's motion in arrest of judgment and his motion for a new trial are overruled and he is directed to appear for sentence at the direction of the district attorney.